## PETITION OF W. B. KISHBAUGH.

APPEAL BY LUZERNE CO. FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 14, 1890—Decided June 2, 1890.
[To be reported.]

Under § 47, act of June 16, 1836, P. L. 740, a prosecutor sentenced by the Court of Quarter Sessions to pay or secure the payment of the costs of prosecution in a criminal case, and to stand committed until the sentence is complied with, may be discharged upon his making application for the benefit of the insolvent laws and complying with their provisions, without having undergone any actual imprisonment under the sentence.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and McCOLLUM JJ.

No. 323 January Term 1890, Sup. Ct.; court below, number and term not given.

On September 17, 1889, in the Court of Quarter Sessions of Luzerne county, a jury empaneled to try an indictment against John J. Jones for the sale of liquors without a license, returned a verdict finding the defendant not guilty and directing that the prosecutor, W. B. Kishbaugh, pay the costs.

### Arguments.

On December 7, 1889, said court sentenced Kishbaugh to pay the costs of prosecution, or give security to the sheriff to do so within ten days, and to stand committed until the sentence should be complied with. On the same day, immediately after his sentence, and without having been actually confined in the jail, Kishbaugh presented a petition to the Court of Common Pleas of said county, setting forth that he was held in custody by the keeper of the county prison by virtue of his sentence and commitment for costs, and praying that he be permitted, in order to procure his discharge, to give bond to the commonwealth conditioned that he appear at the next Court of Common Pleas and then and there present his petition for the benefit of the insolvent laws; and such a bond was presented and filed with the petition. Thereupon the court made an order discharging the petitioner from custody.

On January 13, 1890, the petitioner appeared in the Court of Common Pleas and filed his petition praying the court to grant him the relief provided by law for insolvent debtors, together with statements of his estate, indebtedness, the causes of his insolvency, and an assignment of all his estate for the benefit of his creditors. On February 10th, after notice to the attorney of Luzerne county and after hearing and argument, the court made a final order discharging the petitioner and decreeing that he should not at any time thereafter be liable to imprisonment by reason of any judgment or decree obtained for the payment of money, only, or for any debt, damages, costs or sum of money contracted, or accrued, or occasioned, or due, before that date. To this order, the county of Luzerne excepted, "for the reason that the said W. B. Kishbaugh has not undergone the imprisonment required by law."

—Thereupon the county took this appeal, specifying that the court erred:

1. In discharging the prisoner before he had undergone an imprisonment in pursuance of his sentence.

*Mr. J. B. Woodward* (with him *Mr. William S. McLean*), for the appellant:

1. The question raised by this case is, whether one sentenced to pay costs, only, in a criminal case, can be discharged forthwith by the court, upon making application under the insolvent

law, without having undergone any imprisonment. The result of the practice pursued in Luzerne county for the last two years, and followed in this case, has been to nullify verdicts and sentences imposing costs, to multiply petty prosecutions, and to reduce the administration of justice to a farce. This practice has been founded on § 47, act of June 16, 1836, P. L. 740. The construction placed thereon, under which a worthless prosecutor, sentenced to pay costs, is discharged without going to jail at all, renders nugatory § 48 of the same act, providing for the discharge of persons confined in any jail for any sum of money not exceeding $15 after an imprisonment of thirty days.

2. That construction also renders useless and unnecessary the act of May 6, 1887, P. L. 86, authorizing the county commissioners to discharge persons confined for non-payment of costs only, without any proceedings under the insolvent laws. If the party never goes to jail at all, there will be no occasion to invoke either of the enactments cited. The Court of Quarter Sessions of Allegheny county, McClure, P. J., has held that the petitioner must have remained in prison three months, to become entitled to a discharge: Re John Woods, 1 Pittsb. 17. In the only other decisions we have found, upon this point, the courts differed in opinion from McClure, P. J.: Commonwealth v. Trout, 16 Phila. 649: Insolvency of Ashton, 5 Kulp 23. But there are decisions of the county courts construing the act of May 6, 1887, P. L. 86, and the similar act of June 13, 1883, P. L. 99, and the arguments and reasoning on which those decisions were rested, will apply just as well to the construction of § 47 of the act of 1836.

3. Although the act of May 6, 1887, does not in words require it, the courts have uniformly held that an application for a discharge thereunder cannot be made until the prisoner has been confined for thirty days, or, as some say, three months: Commonwealth v. Ross, 1 Lack. Jurist 217; Commonwealth v. Cole, 6 Law Times, N. S., 127; Commonwealth v. Frior, 2 Pa. C. C. R. 58; Commonwealth v. VanGorder, 1 Law Times 113. So, it is more reasonable to suppose that, in enacting § 47 of the act of 1836, the legislature intended the application should not be made until after the prisoner had been confined a reasonable time, say thirty days or three months. All the legislation prior to it contemplates an actual confinement in jail for

Opinion of the Court.

a certain period, when costs cannot be met, and the language of that section implies that there must be an actual confinement. Is it conceivable that the legislature intended to compel the court to discharge a prisoner immediately after solemnly declaring that he shall stand committed until the costs are paid? The only interpretation that can harmonize §§ 47 and 48 is, that under the former application for a discharge may be made after three months, while the latter gives a discharge without any application, and after thirty days, if the costs do not exceed $15.

*Mr. Q. A. Gates*, for the appellee, presented no paper-book.

OPINION, Mr. CHIEF JUSTICE PAXSON:

One John J. Jones was indicted in the Quarter Sessions of Luzerne county for a misdemeanor. The jury acquitted him of the offence with which he was charged, and directed that the prosecutor, W. B. Kishbaugh, pay the costs. On December 7, 1889, the said court sentenced Kishbaugh "to pay the costs of prosecution, or give security to the sheriff to do so within ten days, and to stand committed until this sentence be complied with." On the same day the said Kishbaugh presented his petition to the Court of Common Pleas praying "that he be permitted, in order to procure his discharge, to give bond to the commonwealth of Pennsylvania, conditioned that he appear at the next Court of Common Pleas of said county, and then and there present his petition for the benefit of the insolvent laws," etc. On the same day, upon the presentation of this petition and bond, the court discharged the petitioner from the custody of the sheriff. The county of Luzerne took this appeal from said order, in order to test the question whether a prosecutor, who has been legally sentenced by the Court of Quarter Sessions to pay the costs of prosecution, can be discharged without such payment and without any imprisonment whatever, upon filing a petition and bond to take the benefit of the insolvent laws.

We have no decision of this court which rules this question, and the few decisions of the Courts of Common Pleas throughout the state are not uniform. We must turn, therefore, to the acts of assembly, and see what is there written.

Opinion of the Court.

The forty-seventh section of the act of June 16, 1836, P. L. 740, provides:

" The Court of Common Pleas of any county in which any person may be confined by sentence or order of any court of this commonwealth, until he restore any stolen goods or chattels or pay the value thereof, or in which any person may be confined for non-payment of any fine, or of the costs of prosecution, or upon conviction of fornication or bastardy, and for no other cause, shall have power to discharge such person from such confinement, on his making application and conforming to the provisions hereinbefore directed in the case of insolvent debtors: provided that, where such person shall have been sentenced to the payment of a fine, or after a conviction of fornication and bastardy, he shall not be entitled to make such application until after he shall have been in actual confinement, in pursuance of such sentence, for a period not less than three months."

It will thus be seen that under this section the only two instances in which imprisonment for three months is required are, (a) where the person has been sentenced to pay a fine; and (b) where he is under conviction of fornication or bastardy. These exceptions necessarily exclude all others. A sentence to pay the costs of prosecution cannot be regarded as the equivalent of a fine, within the meaning of this section. The two subjects are referred to distinctly and separately. Aside from this, they are essentially different in their nature. A man under sentence to pay a fine is a transgressor. He is either a criminal, or has violated some law. A man who is merely sentenced to pay the costs of prosecution is not a criminal, nor has he broken any law. He may have made a mistake in bringing a prosecution, or he may be the victim of the blunder or prejudices of a jury. In any event, there is nothing in this section which requires him to undergo three months' or any other term of imprisonment as a prerequisite to his discharge under the insolvent laws.

It was urged, however, that the use of the words " confined by sentence " implies imprisonment. There may be some force in this, if we consider these words literally. Yet, in contemplation of law, a man is " confined " the moment he is handed over to the sheriff under sentence. It might not be straining

a point to hold that the doors of the prison must first close upon him before he can apply for his discharge under the insolvent laws. But cui bono? What practical good would result from the application of such a technical rule? Why hold that the prison bolts must first close behind him, if the sheriff is obliged the next moment to throw them back in obedience to the mandate of the insolvent laws? The effect would merely be to put the county to a needless expense, and subject to useless mortification a man who has violated no law, who may be an honest, law-abiding citizen, and guilty of no crime but poverty.

The forty-eighth section of the same act (1836) provides:

"Every person who shall be confined in any jail of this commonwealth, in execution or otherwise, for any debt, sum of money, fine or forfeiture, not exceeding in amount the sum of fifteen dollars, exclusive of costs, and who shall have remained so confined for the space of thirty days, shall be discharged from such confinement, if there be no other cause of confinement, and shall not be liable to imprisonment again for the same cause: provided, that the estate and effects of such person shall, notwithstanding such discharge, be liable for such debt or other cause of imprisonment in like manner as before."

This is a substantial re-enactment of the act of March 27, 1789, 2 Sm. L. 483. The case of Commonwealth v. Long, 5 Binn. 489, was decided under this last-named act, and it was held that the construction of the act is this: that the prisoner is not entitled to a discharge unless he has remained in confinement for the fine thirty days beyond the time adjudged for imprisonment, and, when he has remained for thirty days, he is entitled to a discharge both as respects the fine and costs. But, neither the fine nor costs are remitted. If the criminal has property, his property is liable for both. We might well say the same in regard to the forty-eighth section of the act of 1836. In the cases enumerated, it entitles a man to his discharge after undergoing thirty days' imprisonment, without passing through the insolvent court. It throws no light upon the question we are considering. Nor has any other act of assembly been called to our attention which affects it.

While the learned counsel for the appellant contend that some imprisonment is necessary before a discharge can be had

under the insolvent laws, we have not been informed as to what extent confinement is required. No law has been pointed out which defines the term. But it was urged that he must undergo a reasonable imprisonment. What is a reasonable imprisonment? No act of assembly has defined it. We fail to see any reason in public morals or public policy why a man under sentence for costs should not be entitled to the merciful provisions of the insolvent laws as fully as any other citizen; and, as we find no law to prevent it, the court below was right in ordering the petitioner's discharge.

Judgment affirmed.