## Commonwealth v. Dickson.

Argued November 19, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Robert P. F. Maxwell*, with him *George F. Blewett*, for appellant.

*John Kennedy Ewing, 3rd,* of *Saul, Ewing, Remick & Saul,* for appellee.

Opinion by James, J., January 29, 1937:

Arthur G. Dickson with three others was indicted on eight bills of indictment; two bills charging false pretence, two with conspiracy to cheat and defraud, two with conspiracy to bring stolen securities into Pennsylvania, and two with bringing into and receiving in the state securities stolen in another state. They were found guilty on all bills of indictment.

On indictment No. 395, July Sessions, 1935, which charged the bringing and receiving of the stolen securities, the defendants were sentenced, on March 20, 1936, to undergo imprisonment. The same day sentence was suspended on all other bills except Bill No. 396, July Sessions, 1935, upon which an order was made for complete restitution of certain funds to be divided in the following proportions: 8.69 per cent to Hornblower and Weeks and 91.31 per cent to Fry and Company. On April 4, 1936, the court reconsidered the sentence of March 20, and imposed the following sentence: "On bills Nos. 1446, June Sessions, 1935, and 396, July Sessions, 1935, each of the defendants, Arthur G. Dickson, Harry A. Stone, Samuel T. Blieden and George De-Horth, is sentenced to make restitution to the person or persons defrauded, in the sums received respectively by each defendant; the aggregate not to exceed the amounts mentioned in each indictment, or such smaller amount as may be satisfactory to the person or persons defrauded." Indictment No. 1446, June Sessions, 1935, charged Dickson alone with false pretence and indictment No. 396, July Sessions, 1935 charged all of the defendants with false pretence, and it appears from these indictments that John W. Fry and Hornblower and Weeks were defrauded. Later, counsel for Dickson filed a petition for leave to pay the sum of $6,584.40 into court and requested the court to satisfy the judgment of restitution and to appoint an auditor for the

purpose of determining to whom said funds should be paid. The court entered an order satisfying the judgment and sentence of restitution imposed upon Bills No. 1446, June Sessions, 1935 and No. 396, July Sessions, 1935, as far as they affected Dickson, and appointed an auditor. The auditor, after full hearing, made a report awarding John W. Fry and Company the sum of $4,-266.52 and Hornblower and Weeks the sum of $1,773.48. Exceptions filed to the report of the auditor were dismissed and the report approved, from which order this appeal was taken by the Fidelity and Casualty Company of New York.

The bills of indictment involve the pledging of certain securities by Dickson to John W. Fry, doing business as John W. Fry and Company, and to Hornblower and Weeks as security for the repayment of money obtained by Dickson. Later it was discovered that the securities, which had been pledged, had been stolen. Some of the shares of the stock were properly indorsed and transferred and the brokerage houses, as innocent pledgees for value, were able to transfer and sell some of the securities and apply the proceeds to the reduction of the loans made by them to Dickson. Among the securities pledged with John W. Fry and Company were 100 shares of the United States Steel Corporation and 100 shares of the Commercial Solvents Corporation, which securities, properly indorsed, had been stolen from Beverly, Bogart and Company of New York City. These securities were sold by John W. Fry and Company and the proceeds thereof applied to the reduction of their loan. The Fidelity and Casualty Company of New York, as surety, paid to Beverly, Bogart and Company the sum of $4,027.50, and at the audit presented its claim for this amount, contending it was one of the persons defrauded by the criminal acts set forth in the

indictments, upon which the order of restitution was made, and should share in the funds.

The order of restitution was made under and by virtue of the Act of March 31, 1860, P. L. 382, §179, 19 PS §981, which provides: "On all convictions for robbery, burglary or larceny of any goods, chattels or other property ...... or of receiving such goods, chattels or other property, knowing the same to be stolen, the defendant shall, in addition to the punishment heretofore prescribed for such offenses, be adjudged to restore to the owner the property taken, or to pay the value of the same, or so much thereof as may not be restored. And on all convictions on any indictment ...... for fraudulently, by means of false tokens or pretenses, or otherwise, cheating and defrauding another of his goods, chattels or other property, the defendant, in addition to the punishment hereinbefore prescribed for such offenses, shall be adjudged to make similar restitution, or other compensation, as in case of larceny, to the person defrauded ...... "

Appellant does not question that under this act the court was authorized to impose the order of restitution upon the indictments for false pretense, but contends that as indictment No. 395, July Sessions, 1935, for receiving, included among others the securities mentioned in indictment No. 1446, June Sessions, 1935, for false pretence, it was the duty of the court to make an order of restitution upon the sentence to No. 395, July Sessions, 1935, and to permit appellant to participate in the distribution of the funds paid into court. For the offenses, defendants were convicted of, the imposition of sentence was a matter within the discretion of the trial judge. It is not a mandatory duty upon the trial judge to sentence upon all indictments, for which convictions are obtained, but he may impose sentence upon

such indictments as in the exercise of his discretion he may deem right and proper. Nor is it the duty of the court to impose upon a defendant a sentence for all the penalties which may follow as the result of a conviction. In imposing the order of restitution, upon the indictments for false pretence, the trial judge undoubtedly took into consideration the ability of the defendants to comply with the order of restitution, and also the respective positions which the parties bore to the theft of the securities and the subsequent fraud that was committed upon the brokers. Conceding that under the indictment for receiving, the court could have made an order of restitution, it does not follow that the appellant was entitled to share in funds which had been paid into court for the express purpose of complying with the order of restitution, upon the indictments which charged false pretence. These indictments charged that John W. Fry and Hornblower and Weeks had been defrauded. Nowhere in these indictments does the name of appellant's principal appear. In order to entitle appellant to participate in these funds, it must appear in the record that appellant was defrauded as the result of the false pretence; whereas, in fact, the proof is that John W. Fry and Company and Hornblower and Weeks were the parties defrauded as the result of the false representation or false pretence made by Dickson. In *Huntzinger v. Com.*, 97 Pa. 336, 341, the court said: "...... In every case, to support a judgment of restitution, the indictment must show that the money or other thing was actually obtained and taken by the defendant. This is as essential as that the indictment must show an offence punishable by a fine or imprisonment to support a judgment that the defendant pay a fine or undergo imprisonment. The record must be self-sustaining." As an order of restitution cannot be made unless the indictment shows

that money or other valuable thing was actually obtained and taken by the defendant, it necessarily follows that unless the indictments, upon which the order of restitution was made, show appellant's principal was defrauded, it cannot participate in the funds paid into court.

Order affirmed.

SUPPLEMENTAL ORDER, February 26, 1937:

In the opinion filed January 29, 1937, we failed to note that after the auditor had filed his report, Hornblower and Weeks and John W. Fry & Company filed a stipulation that if they were entitled to the entire fund, distribution should be made in the following proportions: Hornblower and Weeks 8.69 per cent., and John W. Fry, trading as John W. Fry & Company 91.31 per cent. The report of the auditor was approved except that distribution was ordered in the proportion set forth in the stipulation. With this modification of our opinion and order of January 29, 1937, the action of the court below is affirmed.