## In re Collection of Fines, Costs, Forfeited Bail and Recognizances

*Marshall R. Anspach*, County Solicitor, for County Commissioners.

*John C. Gault*, for Sheriff.

*Lee B. Lansberry*, District Attorney, and *Furst, McCormick, Muir & Lynn*, for Controller.

LARRABEE, P. J., and WILLIAMS, J., November 14, 1950.—A petition for declaratory judgment has been presented by the county commissioners, the district attorney, the prothonotary, the controller, and the sheriff, all of Lycoming County. We have been asked to declare and decree a judgment construing the rights and duties of these various officers with respect to the collection of fines, costs, forfeited bail, and recognizances, and to define the duties of the several officers with respect to the same. In addition, we have been asked to determine how the responsibility for uncollectible accounts may be relieved. We have also been asked to define in what manner and by whom unpaid fines, costs, forfeited bail, and recognizances shall be determined to be uncollectible.

Although our opinion may not be all-inclusive as to the various matters brought before us, we will endeavor

to make clear the rights and duties of the petitioners with respect to their present difficulties. In so doing we will also review phases of the sentencing power of the court.

## The Imposing of Fines

Lycoming County receives fines imposed by its court of criminal jurisdiction by reason of the Act of March 31, 1860, P. L. 427, sec. 78, 19 PS §951, which reads as follows:

"All fines imposed upon any party, by any court of criminal jurisdiction, shall be decreed to be paid to the commonwealth; but the same shall be collected and received, for the use of the respective counties in which such fines shall have been imposed as aforesaid, as is now directed by law."

Subsequent statutes, however, have modified this act, and any later act of the assembly which directs that the fine go to other than the county, is to be followed.

It has also been held that section 78 of the Act of March 31, 1860, supra, does not apply to cases where the fines were expressly appropriated to other funds or persons than the county, and where the laws concerning such appropriations were not specifically repealed: Disposition of Fine, 13 Dauph. 34.

On the other hand, when the legislature provides for new penalties by fine, and the act or acts for the same fail to direct otherwise, such fine or fines go for the use of the respective counties in which such fines shall have been imposed.

## Payment of Fines by Installment

Any person sentenced to pay a fine or to pay the costs of proceedings against him, either in addition to or without a term of imprisonment, may in the discretion of the sentencing authority be given leave to pay such fine or costs by installment: Act of May 17, 1917,

P. L. 199, 19 PS §953. In giving leave to pay the fine in installments, it is the duty of the sentencing authority to fix the amount of each installment and the dates of payment. The sentencing authority may not prescribe a period longer than 12 months for paying the entire fine or costs. In the event of default of payment of any one installment, the entire unpaid balance of the fine or costs shall at once become due and payable and the person sentenced may be apprehended and committed to jail because of such failure.

## Suspension of Sentence

The Act of June 19, 1911, P. L. 1055, sec. 1, as amended, 19 PS §1051, and the Act of May 10, 1909, P. L. 495, sec. 1, 19 PS §1081, allow the court to suspend sentence whenever any person shall be convicted of a crime, except in the case of murder, administering poison, kidnaping, incest, sodomy, buggery, rape, assault and battery with intent to ravish, arson, robbery, or burglary.

It must appear to the court, however, that defendant has never before been imprisoned for crime and that the character of defendant and the circumstances of the case are such that defendant is not likely again to engage in an offensive course of conduct, and that the public good does not demand or require that defendant should suffer the penalty imposed by law.

In so suspending, the court has the power of placing defendant on probation for a definite period, on such terms and conditions as it may deem right and proper. As one of the terms of the probation the court has the right to direct that money be paid for the use of the county and such condition for the payment of money shall not be considered as the imposition of a fine or a sentence, nor prevent the court from thereafter sentencing defendant under the act under which he or she was convicted, upon violation of his or her parole.

This condition for the payment of money under a suspension shall not exceed the amount of the fine fixed by law for such offense, and when the court is considering a suspended sentence, detention in an institution provided for care of juvenile delinquents shall not be considered an imprisonment. The court in setting the probation time cannot fix it for longer than the maximum term for which defendant might have been imprisoned.

Previous to this Act of 1911, some judges had been making a practice when suspending sentence of making as a condition of suspension the payment of money to the county commissioners. The Pennsylvania Superior Court ruled that such payment of money to the county commissioners was the same as a fine and a sentence: Commonwealth ex rel. Nuber v. Keeper of Workhouse, 6 Pa. Superior Ct. 420; Commonwealth v. Dunleavy, 16 Pa. Superior Ct. 380. The Supreme Court, however, in Commonwealth ex rel. Wilhelm v. Morgan, 278 Pa. 395, commented that such practice was without authority and the right doubtful. This latter case leads us to conclude that the only legal right to suspend sentence comes by reason of the acts quoted above. See Commonwealth v. Denson, 157 Pa. Superior Ct. 257.

The Act of August 6, 1941, P. L. 861, sec. 25, however, allows the court in its discretion to place a person on probation for such definite period as the court shall direct, not exceeding the maximum period of imprisonment allowed by law for the offense for which such sentence might be imposed. Such probation by the court in lieu of sentence is allowed in any criminal offense except in murder of the first degree.

### Sentence of Restitution

The courts have been given jurisdiction to order restitution on all convictions for robbery, burglary or larceny of any goods, chattels, or other property, made the subject of larceny by the laws of the Commonwealth,

as well as on all convictions for unlawfully and fraudulently taking or obtaining such goods, etc., or of receiving such goods, chattels or other property, knowing the same to be stolen. In such cases the sentencing judge may order as a part of the sentence that the goods be restored to the owner, or that the value of the same be paid to the owner, or so much thereof as may not be restored.

The court is also given jurisdiction to order similar restitution on all convictions for forgery, uttering, publishing, or passing any forged or counterfeit coin, bank notes, check or writing, and on indictments for fraudulently, by means of false tokens or pretences, or otherwise, cheating and defrauding another of his goods, chattels or other property.

Jurisdiction to order restitution in criminal cases depends upon the statute, and the court is without power to include restitution in a sentence for a crime not listed in the statute: Commonwealth v. Gross, 161 Pa. Superior Ct. 613; Commonwealth v. Rouchie et al., 135 Pa. Superior Ct. 594.

It is not mandatory that the sentencing authority impose a sentence of restitution: Commonwealth v. Dickson, 125 Pa. Superior Ct. 110.

### Liability for Costs

At common law the Crown neither paid nor received costs in criminal cases. The prosecutor was not liable for costs in any event, because the prosecution was in the name of the Crown. Defendant was liable for the costs even when acquitted, and his only remedy in such event being an action against the prosecutor for malicious prosecution. This was the law brought to the Colony of Pennsylvania and is our law today except as changed or supplied by statute: Commonwealth v. Adams, 60 Pitts. L. J. 175. The legislature, however, has passed acts which have relieved the innocent de-

fendant from the paying of costs, and except in a few instances, the county has to pay the costs when defendant is acquitted, or when a bill is ignored by the grand jury.

The Act of September 23, 1791, 3 Sm. L. 37, sec. 13, 19 PS §1221, provides that when a person is brought before a court, justice of the peace, or magistrate, having jurisdiction over the case, and is charged with having committed a crime, and when such charge upon examination appears to be unfounded, no costs shall be paid by the innocent person; and provides further that the same shall be chargeable to and paid by the county, or the city, as the case may be. This act relieves an innocent defendant of paying the costs in the case of appeals from summary convictions and in cases before courts and magistrates where charges have been made without foundation.

The legislature directs that costs of prosecution accruing on indictments charging felony and ignored by the grand jury shall be paid by the county; as well as costs, in case of felony, when defendant is acquitted by the petit jury. In cases of surety of the peace, the county is liable for the costs if the court so directs: Act of March 31, 1860, P. L. 427, sec. 64, 19 PS §1223.

In ignoring bills of indictment, the grand jury has the power in all prosecutions, except in cases of felony, to decide who is to pay the costs, the county or the prosecutor. In cases of acquittal, in all prosecutions, except in cases of felony, the petit jury may determine whether the county, the prosecutor, or defendant, shall pay the costs, or whether the same shall be apportioned between the prosecutor, or defendant. In such cases the court shall immediately pass sentence to that effect and shall order the one sentenced to be committed to the jail of the county until the costs are paid, unless he give security to pay the same within 10 days: Act of March 31, 1860, P. L. 427, sec. 62, 19 PS §1222.

Special statutes have been provided by the legislature to take care of costs in cases of petty larceny, and in cases of assault. These statutes provide the method of placing liability for such costs on either the prosecutor, defendant, or the county: Act of May 25, 1897, P. L. 89, secs. 1, 2, 19 PS §§1227 and 1228. In assault and battery cases the magistrate may determine who is to pay the costs: Act of May 27, 1919, P. L. 306, sec. 2, 19 PS §22. There are other special statutes which give the magistrate the right of placing the costs.

## Liability and Payment of Costs by County Forthwith

At common law the constable, the justice of the peace, or other officer, sometimes had a difficult time collecting his costs.

This condition was corrected in Pennsylvania, however, by the legislature, and the county must now pay the costs forthwith, whether or not defendant is convicted or acquitted, unless the party convicted shall pay the same. The wheels of justice therefore move smoothly. The county then has the power to levy and collect the costs from the party convicted.

The Act of May 11, 1874, P. L. 132, sec. 1, 19 PS §1224, provides for the payment of costs forthwith in the case of felonies. The Act of May 19, 1887, P. L. 138, sec. 1, 19 PS §1225, provides for such payments in the case of misdemeanors. Like provisions have been made with respect to other crimes such as surety of peace, and desertion.

## County to Supervise Collection of Costs

The county is the real party in interest in all costs accruing in the criminal courts, and it is the duty of the county commissioners to supervise the collection of the same when persons are liable over to the county.

The county has to pay all costs forthwith, and it is only logical and proper that the commissioners who represent the county should supervise the collection of these costs.

In addition, there is statutory authority to support this ruling.

The Act of May 11, 1874, P. L. 132, sec. 1, 19 PS §1224, directs the county to pay forthwith the costs in cases of felonies, and gives the county power to levy and collect the costs from the parties convicted. In cases of misdemeanor, wife desertion, and surety of the peace, the Act of May 19, 1887, P. L. 138, sec. 2, 19 PS §1226, directs the district attorney and the county commissioners to collect the costs.

It is our understanding that since March 1948 the prothonotary, as clerk of the quarter sessions court, has attempted to collect these costs, as well as fines due the county. We fail to see how, in the absence of any statute requiring it, this duty can fall on him, and when he so acts voluntarily he is doing so as an agent of the commissioners.

It is true that the Act of May 9, 1913, P. L. 188, sec. 1, 17 PS §1491, directs that the prothonotary, who in Lycoming County is also the clerk of the courts, shall keep a cost docket wherein shall be entered in itemized form all costs collected or received. This statute, however, does not refer in particular to costs arising from commission of crimes and it cannot be inferred that this requirement for keeping a cost docket thereby makes him responsible for the collection of criminal costs, or fines. In many instances it is the duty of the prothonotary to collect costs not pertaining to the criminal courts. In such cases it is necessary that a record be kept in a docket.

Although the county commissioners are under duty to take the initiative, the district attorney should assist, and the court should coöperate. At the present time the district attorney prepares the bills of costs. These bills of costs should be complete at the final disposition of each case in the criminal courts.

*County to Collect Fines Except Those That Go to the
Commonwealth, Which Are to Be Collected by the
Prothonotary as Agent of the Commonwealth*

The county is the real party in interest in those fines which are directed to be paid to the county and it is the duty of the county to collect such fines.

When the court sentences a defendant to pay a fine to the county, the clerk of the court should immediately certify the matter to the county commissioners. The Act of March 24, 1818, P. L. 273, 7 Sm. L. 120, sec. 1, 8 PS §176, and the Act of May 2, 1929, P. L. 1278, sec. 384, 16 PS §384, direct that the clerk of the court certify and estreat into the office of the commissioners of the county all fines, forfeited recognizances, and other forfeitures, imposed, lost, or forfeited in any court, except such as are directed to be paid into the State Treasurer. These estreats and returns shall be under oath or affirmation of the court.

These same two acts direct the commissioners to superintend the collections of the moneys they collect for the fines, and direct that accounts of the same be annually settled by the county controller.

Although these estreatment acts direct that the fines and recognizances be certified to the commissioners' office within 10 days of the end of the term of court, this does not mean that it is necessary to hold the records of the fines and recognizances until such time.

All fines which by law go to the Commonwealth are to be collected by the clerk of the courts as the agent of the Commonwealth. It is our opinion that when the clerk of the courts collects these fines, he is acting in his individual capacity as the agent of the Commonwealth. See Matthews et al. v. Kiess, 1 Lyc. 123, for a discussion of this matter.

Although the Commonwealth is not a party to this action and cannot be bound by this opinion, we doubt

the liability of the county for fines which the clerk fails to collect. The clerk of the court, being an agent of the Commonwealth in such collections, any collection difficulty is a matter for the clerk and the Commonwealth, rather than the county commissioners.

Of course, where the court has mistakenly directed fines to go to the county when such fines should have gone to the Commonwealth, and the county has received such fines, the money should be paid over by the county to the Commonwealth. Such transactions do not constitute losses to the county, as the county should have not received such fines in the first instant.

The Act of May 9, 1949, P. L. 919, 17 PS §1500.1 to 9, directs the clerk of the courts to collect and transmit fines and forfeitures imposed for the use of the Commonwealth, as agent for the Commonwealth and to render to the Department of Revenue every month a return of such, and allows a fee to the clerk as a commission for collecting.

It is to be noted, however, that from any money collected by the clerk, costs are to be first paid, as the Act of July 15, 1935, P. L. 1002, sec. 1, 19 PS §1296, provides that whenever any fines or forfeited bail are payable to the Commonwealth, all costs of prosecution in such cases shall first be paid out of the money realized. This means that if the clerk of the court receives money for the fines due the Commonwealth, he shall see that the costs of prosecution are paid before he returns the money to the Commonwealth.

The clerk of the court should turn over to the commissioners a sworn copy of all sentences, together with a copy of any orders of the court which allow defendants involved time to pay fines or costs.

We are of the opinion that when sentences are suspended by the court, and the court makes as a condition of the suspension that money is to be paid to the com-

missioners for the use of the county, that this money goes to the county in all cases.

### Duty of the Sheriff

The sheriff receives prisoners upon sentence of the court. As in the past the sheriff should determine as to whether or not fine and costs are paid before releasing a prisoner from jail. If the prisoner has served his time, and fine and costs, if any, have been paid, then the sheriff should release the prisoner without further order of court. However, the prisoner should show a receipt to this effect, signed by the commissioners in the case of all costs and fines payable to the county and by the clerk of the courts in case of fines payable to the Commonwealth. If the fine and costs have not been paid, then the sheriff has no right to release a prisoner without further order of court. The sheriff has, at times, showed some initiative in assisting an insolvent prisoner in filing proper forms for release according to law. We do not desire to discourage this practice. However, if the sheriff as keeper of the county jail, discharges a prisoner illegally, without payment of costs and fine, he becomes personally liable: Schuylkill County v. Reifsnyder, 46 Pa. 446.

### Uncollectible Costs and Fines

It often happens that one sentenced to pay a fine or costs is unable to do so. In the days of the early English courts, such persons had to stay in jail for indeterminate lengths of time until some person was willing to effect their release by the payment of their fines and costs.

This harsh treatment has now been changed and we pride ourselves in not incarcerating a person indefinitely because he does not have sufficient worldly goods to pay his or her debts.

The court of common pleas of any county in which a person is confined by sentence or order of court, by

reason of nonpayment of fine, nonpayment of restitution, nonpayment of costs, or upon conviction of fornication and bastardy, may discharge such person from confinement on his making application and conforming to the provisions with respect to insolvents.

If the fine does not exceed $15, such actual confinement for nonpayment of fine need not exceed 30 days before application for release can be presented. If the fine exceeds $15, or after conviction of fornication and bastardy, there must be actual confinement of three months before the application under these insolvency acts can be made. In the case of fornication and bastardy, however, the court has the authority to discharge a prisoner on his own recognizance, under conditions that the court shall approve, although it has been the practice in Lycoming County to detain in jail for a period of three months those persons sentenced for fornication and bastardy, when they cannot make arrangement with suitable bonds for the payment of their order. See Act of June 4, 1901, P. L. 404, sec. 6, 39 PS §13, and Act of June 16, 1836, P. L. 729, sec. 47, 39 PS §323.

It has been held by our Supreme Court in Kishbaugh's Petition, 135 Pa. 468, that a person sentenced to pay the costs, and to stand committed until the sentence of the court is complied with, may be discharged upon his making application under the benefit of the insolvent laws, and complying with their provisions, without having to undergo any actual imprisonment under the sentence.

Chief Justice Paxson, in referring to a prosecutor who was sentenced to pay the costs, said:

"A man under sentence to pay a fine is a transgressor. He is either a criminal, or has violated some law. A man who is merely sentenced to pay the costs of prosecution is not a criminal, nor has he broken any law."

In construing the Act of June 16, 1836, supra, Chief Justice Paxson ruled:

"It will thus be seen that under this section the only two instances in which imprisonment for three months is required are, (a) where the person has been sentenced to pay a fine; and (b) where he is under conviction of fornication or bastardy. These exceptions necessarily exclude all others."

In addition to these acts which allow a person who is insolvent to petition for his release, we have the Act of May 6, 1887, P. L. 86, 39 PS §14, which allows the county commissioners, with the permission of the quarter sessions court, to secure the discharge of a prisoner, without the delay and expense of any proceedings under the insolvent laws. The act allows the commissioners to petition for the discharge from prison of every convict who shall have served his term of imprisonment, or who shall have been committed for nonpayment of costs only, or any person who shall have failed to comply with the order of court upon conviction of fornication or bastardy, and has been confined for a period of more than three months, nothwithstanding if he be convicted and shall not have paid the costs of prosecution, fine or made restitution, or paid the value of stolen goods, or failed to comply with the court's order upon conviction of fornication and/or bastardy, provided that, in the opinion of the commissioners, such person is unable to pay or restore the same, and provided further that such discharge shall not prevent the Commonwealth, or any person interested in such payment from proceeding by proper action to recover the same from the property of the person.

This act was passed for the relief of the county from unnecessarily supporting a convict after the purposes of punishment have been sufficiently fulfilled. It seems to apply not only when a person is imprisoned for costs, but also when he or she is imprisoned because of

nonpayment of fine and has been imprisoned. The act does not apply to defendants in nonsupport and desertion proceedings.

The Act of 1887, supra, should not be used to render the imposition of fines and costs nugatory. Such payment should be enforced if possible. At times, however, there will be occasions when the provisions of this act should be taken advantage of and in such cases the commissioners should not hesitate to take the initiative.

When a release is effected under the provisions of the Act of May 6, 1887, the persons released continue to be liable for the payment of the fines, or costs. However, release under the insolvency acts discharges the obligation without actual payment.

Promissory notes have been demanded by the commissoners in Lycoming County upon such releases, these notes being to the order of the county commissioners for the amount of the fines and costs remaining unpaid. The taking of such notes expedites collections from such of the released prisoners who may be in a position to make payments. We caution the commissioners, however, that they should hesitate in accepting notes from those who are incarcerated for the nonpayment of fines owed to the Commonwealth.

### Release by Parole or Pardon

Prisoners may be paroled by the court or the Pennsylvania Parole Board.

The Pennsylvania Parole Board Act became effective on June 1, 1942, and provided for the establishment of a uniform and exclusive system for the administration of parole in Pennsylvania. The Pennsylvania Parole Board has exclusive jurisdiction in the granting of paroles to persons who have received a maximum sentence of two years or more in any penal institution of the State or county. The powers and duties of the board do not extend to persons sentenced for a maxi-

mum period of less than two years as the courts retain their powers of parole in these cases.

It sometimes happens that either the Parole Board, or the courts, may release a prisoner before his fine or costs are paid. This may often happen in a case in which the prisoner has been sentenced to an indeterminate term with a fixed maximum and minimum term. In many of these cases the prisoner is released when he has served his minimum sentence.

The court in Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, ruled, as to paroles, as follows:

"Such a release from imprisonment does not, of course, remit the fine, . . . Paroles, as heretofore granted by the Courts or other authorized agencies, have never been regarded as interfering with the enforcement of the payment of fines, and the power to parole has uniformly been exercised without relation thereto. If the parolee does not liquidate the fine or costs which have been imposed upon him, he is still subject, just as before the passage of the present act, to all existing laws for the enforcement of that portion of his penalty."

It appears that the only way a convicted person may be released from the payment of fine and costs is to either take the benefit of the insolvency laws, or obtain a remission of the fine from the Governor. The Governor has the authority to pardon and remit fines. In all other cases of release from either the county jail or State institutions, the county may attempt to enforce payment.

### Settlement with Controller

We have been asked to determine how one who is chargeable with the collection of fines and costs may be relieved of this responsibility when such accounts are uncollectible.

The county commissioners are responsible for the collection of fines and costs, except fines that go to the Commonwealth. This does not mean, however, that if the costs and fines are not collected, that the commissioners will be held financially liable for their noncollection. Such financial responsibility could only happen if the commissioners were derelict in their duty. Such dereliction would have to be proven by positive action. The commissioners are supposed to supervise the collection of fines and costs, and shall annually settle with the controller.

The controller is the chief bookkeeper of the county, and he has general supervision and control of the fiscal affairs of the county. At the end of every year he should go over the accounts of the commissioners, and should follow the advice of the commissioners, or their clerk, as to the value of the accounts. The commissioners probably will always have some accounts that cannot be collected, although the great percentage of fines and costs are eventually paid. In only a small percentage of the cases are fines and costs uncollectible.

Many prisoners are released from State institutions with costs unpaid, and many go on their way, never returning to the county from which they were sentenced.

### Duties of the District Attorney

The district attorney is to assist the county commissioners in the collection of fines and costs. His assistance, however, should be in securing proper orders from the court in order to enforce payments. Such orders should be secured only after the commissioners have tried collection in other ways. The petition for such orders should recite what efforts had been made to collect costs, and fines, and should recite the name of the sentencing judge, and should be presented to

the sentencing judge, if available, for the proper order.

## Recognizances

It is the duty of the county commissioners to collect forfeited recognizances where the proceeds go to the county. In the light of our discussion on fines and costs and the acts we have cited, we are of the opinion that it is not necessary to further review the matter of recognizances.

## Petitions for Bench Warrants

The Lycoming County courts are at present confronted with at least 50 bench warrants, prepared by the district attorney, upon which the prothonotary is petitioner. We will refer these petitions to the Commissioners of Lycoming County for further attention. All petitions for such rules or warrants shall recite what efforts have been made toward collection. Furthermore, the prothonotary is advised to estreat into the office of the commissioners the records upon which these petitions are based. The petition for the warrants should be signed and sworn to by the commissioners, or one of their clerks, whose duty it is to supervise the collection.

## General Discussion

The administration of justice in crime cases has always been a costly matter. Persons who become involved in crime are the ones usually least able to pay fines or costs. Many of them are young. Some are transients, some are financially irresponsible.

As we have said previously, at one time in our history of criminal procedure, the constable, the police officer, and the magistrate had to look to defendant, or the prosecutor, for the costs. The county was not obliged to pay.

We are happy to say that the law is not now so unreasonable. Although the convicted is still liable for the costs, the public is also liable in order that the law enforcer is paid.

The commissioners being responsible for the payment of these costs, are in duty bound to try to collect them. Although we do not desire to detract from their responsibilities, the public should not be too harsh in criticizing the inability of the commissioners to collect costs in some instances.

The court, in Kirkendall v. County of Luzerne, 5 Luz. L. R. 33, in 1876, commented as follows, page 45:

"There are multitudes of cases, in the Court of Quarter Sessions more particularly, where the realization of any costs, whether by officers or witnesses, is always more than doubtful: in some of them, it is, indeed, actually impossible. The poverty of a prosecutor in one event, and of the accused in another, each furnish an illustration . . . Is there an officer or witness in receipt of his own yet? Not at all. The county has boarded the delinquent; the jailer has guarded him; but he goes at last; *independent irresponsibility* makes him free for all time. The law gives no compensation under such circumstances. The discharge of duty on the part of officers in such cases, as well as the attendance of witnesses, are simply incidents of the social state. Officers and citizens alike must be content to charge their account to the benefits of society, which overbalance by far all its incidental hazards."

## Declaratory Order of Court

And now, November 14, 1950, the court orders, decrees and declares:

1. That all fines imposed upon any party by the Lycoming County court in crime cases shall be col-

lected and received for the use of Lycoming County, except as otherwise directed by law.

2. That Lycoming County shall pay costs of prosecution in all cases forthwith but that the county may levy and collect costs from any party made primarily responsible for the same.

3. That the county commissioners shall supervise the collection of all costs and all fines which go to the county.

4. That the District Attorney of Lycoming County shall assist the county commissioners in the collection of the costs and fines.

5. That the clerk of quarter sessions and oyer and terminer courts shall collect all the fines which by law go to the Commonwealth and that in so doing he is acting in his individual capacity as agent of the Commonwealth.

6. That Lycoming County is not liable for Commonwealth fines which such clerk of the court fails to collect.

7. That costs in all such cases shall first be paid before the money is sent to the Commonwealth of Pennsylvania representing fines so collected.

8. That the clerk of the such courts shall render to the Department of Revenue, Commonwealth of Pennsylvania, a statement every month with respect to fines and forfeitures due the Commonwealth.

9. That the clerk of the courts should immediately certify, under oath, to the county commissioners all fines, forfeitures, recognizances, and other forfeitures imposed, lost or forfeited in any court, except such as are directed to be paid to the State Treasurer.

10. That the clerk of the courts shall so certify immediately and at least within 10 days of the end of the term of court.

11. When sentences are suspended, money received

by the county commissioners, at the direction of the court, is the property of Lycoming County.

12. That the Sheriff of Lycoming County shall not release prisoners who have not paid fines or costs, except by order of court.

13. That prisoners may be discharged without payment of fine and costs by conforming to the provisions with respect to insolvents, in which event the prisoner is released from obligation without actual payment.

14. That a fine may be remitted by the Governor of Pennsylvania, in which event the prisoner is released from actual payment of the same.

15. That the county commissioners, with the permission of the court, may discharge a prisoner without the delay and expense of any proceedings under the insolvents law, provided that such prisoner meets with the requirements of the Act of May 6, 1887, P. L. 86, and that such discharge shall not prevent the Commonwealth or any other person interested from proceeding to recover the fine, costs or other payment due from the property of the person released.

16. That prisoners may be paroled by the court or the Pennsylvania Parole Board before fines or costs are paid, in which event the prisoner is not relieved of his liability for paying such fine and costs.

17. That the county commissioners are not personally liable for the noncollection of fines and costs unless it is clearly shown they have been derelict in their duty in trying to collect them.

18. That the controller should go over the commissioners' accounts of fines and costs at the end of each year, the commissioners, however, to be responsible for only those fines and costs that have been collected by them.

19. That the county commissioners shall collect forfeited recognizances where the proceeds are to go to the county.