Opinion by
Woodside, J.,
. This is. an appeal by the Commonwealth from an order of the Court of Quarter Sessions of Chester Coufíty vacating á sentence to pay the costs of a criminal prosecution; The sentence' had been imposed upon k defendant after a jury had found him not guilty of the misdemeanor with which he was charged, but had directed him to pay the costs of prosecution.
*297 The defendant was charged with wantonly pointing and discharging a firearm in violation of The Penal Code of June 24, 1939, P. L. 872, §716, 18 P.S. §4716.
The legislature has provided for the disposition of costs in misdemeanor cases by providing, inter alia, that “. . . in all cases of acquittals by the petit jury on indictments for the offences aforesaid, the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant, shall pay the costs, or whether the same shall be apportioned between the prosecutor and the defendant, and in what proportions; . . .” Act of March 31, 1860, P. L. 427, 445, §62, 19 P.S. §1222. This was a reenactment of a substantially similar provision contained in the Act of December 7, 1804, 4 Smith’s Laws 204, which was a temporary act, “continued and made perpetual” by an act passed March 29, 1809, 5 Smith’s Law 48. Thus, the statutory law of this Commonwealth has permitted the imposition of costs upon acquitted defendants for over a century and a half.
The court below found that the above provision of the Act of 1860 permitting the imposition of' costs upon an acquitted defendant was unconstitutional for a variety of reasons. The court in its opinion suggested that the statutory provision is unconstitutionally vague; that it is an unconstitutional delegation of legislative power; that it violates the doctrine of fundamental fairness; that it affords no hearing; that it is a denial of the equal protection of the law; that it does not require proof beyond a reasonable doubt; that it provides for an unreasonable classification; and that it is an instrument of oppressive cruelty. To our knowledge, no court has ever found a Pennsylvania statute in such flagrant violation of the Constitution! If the statute were so flagrantly unconstitutional, it would indeed be a sad commentary upon the scores of appellate court judges who have examined the provision and *298 the hundreds of trial judges who have applied it without seeing in it any of the infirmities conceived by the court below.
The validity of a statute imposing costs upon an acquitted defendant was before the Supreme Court in Commonwealth v. Tilghman, 4 S. & R. 127 (1818), where Mr. Justice Gibson prophesied that the provision in the Act of 1804 would “prove highly beneficial” even though it, “at first view, may appear unjust.” One hundred thirteen years later Judge Keller, speaking for this Court said of the provision imposing costs upon acquitted defendants, “However anomalous the course may appear to jurisdictions unfamiliar with our procedure, it is the law of this Commonwealth and it works substantial justice.” Commonwealth v. Cohen, 102 Pa. Superior Ct. 397, 401, 157 A. 32 (1931).[1] Between these two decisions the statutory provision here questioned was examined by the appellate courts, and its use approved many times: Harger v. Commissioners of Washington Co., 12 Pa. 251 (1849); Baldwin v. Commonwealth, 26 Pa. 171 (1856); Commonwealth v. Keenan, 67 Pa. 203, 207, 208 (1871); Linn v. Commonwealth, 96 Pa. 285 (1881). In Commonwealth v. Tremeloni, 93 Pa. Superior Ct. 432 (1927), this Court reversed the court below which had set aside the costs imposed upon a defendant by a jury.
In addition to the above cases which affirmed the imposition of costs upon acquitted defendants, other appellate court cases have recognized the legality of the provision. For examples see, County of Wayne v. Commonwealth, 26 Pa. 154 (1856); Commonwealth v. Kocher, 23 Pa. Superior Ct. 65 (1903); Berks County v. Pile, 18 Pa. 493 (1852). The provision here questioned was examined and applied in scores of lower *299 court cases, including Commonwealth v. King, 33 Pa. D. & C. 2d 235, decided this year.[2]
Our Supreme Court has passed upon the constitutionality of the provision of the Act of 1860 imposing costs upon an acquitted defendant. In Wright v. Commonwealth, 77 Pa. 470 (1875),[3] the appellant, who had been acquitted of a misdemeanor but sentenced to pay the costs, contended that §62 of the Act of March 31, 1860, P. L. 427, 445, supra, was unconstitutional. The Supreme Court rejected the contention and affirmed the sentence imposing the costs upon the defendant. In the argument before us it was suggested that cases decided prior to the 14th Amendment to the Federal Constitution and prior to the adoption of our Constitution of 1874 are of little authority in presently considering the constitutionality of the statutory provision here being attacked. The argument is not pertinent for our Supreme Court has upheld the constitutionality of the questioned statutory provision after the adoption of Pennsylvania’s present constitution and after the adoption of the 14th Amendment to the Federal Constitution.
The Supreme Court has sustained the validity of the Act of 1804 and the Act of 1860.. When the validity of a statute is attacked and a decision rendered sustaining it, there is a presumption that all existing reasons for declaring the act unconstitutional were considered and deemed insufficient. Keator v. Lacka *300 wanna County, 292 Pa. 269, 272, 141 A. 37 (1928); Dole v. Philadelphia, 337 Pa. 375, 379, 11 A. 2d 163 (1940); Nester Appeal, 187 Pa. Superior Ct. 313, 319, 144 A. 2d 623 (1958).
As the Supreme Court has twice passed upon the constitutionality of the very provision here questioned, the court below and this Court have no standing to overrule that Court’s holding. Ordinarily, we would rest our decision on Wright v. Commonwealth, supra, without further comment. However, the appellee has suggested that “no one has heretofore challenged the constitutionality under present day constitutional concepts of Pa. Stat. Ann. tit. 19, §1222.” Of course, the constitutionality of the provision has been challenged and its validity upheld by the Supreme Court of Pennsylvania, so we must assume that counsel is asking us to apply to the statute a new test based upon “present day constitutional concepts,” which, he says, “accord a fuller measure of protection to accused persons.” It is not clear to what extent this Court is being asked to ignore existing decisions of our Commonwealth’s highest court, but it is clear that counsel is suggesting that the legislature has less power to deal with matters of this nature today than it did when “old” concepts of the constitution existed. But, consider what one of the most distinguished proponents of the “present-day concept” said this year on the question of declaring unconstitutional a state act which made it a misdemeanor to carry on a business theretofore considered to be legal. Mr. Justice Black, in speaking for at least eight members of the Supreme Court of the United States, said that that Court has “returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws.” Ferguson v. Skrupa, 372 U.S. 726, 730, 83 S. Ct. 1028 (1963). An examination of 7 P.L.E. Consti *301 tutional Law §17 and cases there cited will demonstrate .how far our own courts have gone in applying this rule.
The defendant in this case has a heavy burden to set aside the verdict of his peers based upon a statute of the legislature. As stated by Mr. Justice Cohen in •the ease of Realty Corp. v. Philadelphia, 390 Pa. 197, 205, 134 A. 2d 878 (1957), “No act or portion thereof -should be declared unconstitutional unless ‘it violates the Constitution clearly, palpably plainly; and in such manner as to leave no doubt or hesitation in our minds.’ Kelley v. Baldwin, 319 Pa. 53, 54, 179 A. 736 (1935); Sablosky v. Messner, 372 Pa. 47, 59, 92 A. 2d 411 (1952).” “The burden of proof is upon the one who claims that the statute is unconstitutional.” Commonwealth v. Bristow, 185 Pa. Superior Ct. 448, 458, 138 A. 2d 156 (1958).
We know of no Pennsylvania statute whose validity has been attacked after so many years of constant application. Since the Act of 1804, two new constitutions have been adopted and scores of amendments ;have been made to the present constitution.[4] There have been over a hundred regular sessions of the legislature and a score of special sessions since the Act of 1804 was enacted. Hundreds of judges have examined and passed upon the statutory provision here questioned. As stated by Mr. Justice Agnew, and repeated by the Supreme Court in Booth & Flinn, Ltd. v. Miller, 237 Pa. 297, 306, 85 A. 457 (1912), concerning a some *302 what similar situation, “The continued exercise of the power . . . cannot be accounted for except on the ground that all men, learned and unlearned, believed it to be a legitimate exercise of the legislative power. This belief is further strengthened by the fact that no judicial decision has been made against it.”
A construction of the constitution adopted and acted upon by the legislature and acquiesced in by the people for many years is entitled to great weight. Summit Hill Borough, 240 Pa. 396, 399, 87 A. 857 (1913); 7 P.L.E. Constitutional Law §12. It is true that mere passage of time does not give validity to an unchallenged statute, but the fact that a statute has been in effect for many years, even when unchallenged, is a strong argument in favor of validity. James v. Public Service Commission, 116 Pa. Superior Ct. 577, 177 A. 343 (1935); 7 P.L.E. Constitutional Law §20. The provision questioned here has not only been in existence since the earliest days of our Commonwealth but it has been twice challenged and its validity sustained.
The questioned provision of the Act of 1860 has been equated in the opinion of the court below and throughout the brief of the appellee with the practice which this Court condemned in Commonwealth v. Franklin, 172 Pa. Superior Ct. 152, 92 A. 2d 272 (1952). Prior to the decision in the Franldin case, which held the practice unconstitutional, certain judges, almost exclusively in Philadelphia, frequently ■held a defendant in bail to keep the peace after he had been acquitted by a jury. New of the defendants thus held' could raise the bail, and as a result they spent months and often years in jail. From 1939 to 1949, .478 acquitted defendants in Philadelphia served a total of over 600 years in prison, an average of well over a year each. The practice was unknown to most of the areas of the Commonwealth, and generally shocked “up state” judges who encountered it in Philadelphia.
*303 There is no comparison between the statutory provision here questioned and the practice condemned in the Franklin case. Here the General Assembly of Pennsylvania thrice authorized the imposition of costs by a jury upon defendants found not guilty; the practice condemned in the Franklin case was not based upon an act of our legislature, but was a procedure adopted by the courts from an English Statute, 34 Edw. Ill c 1, enacted in 1360. Here a jury composed of the defendant’s peers directed the imposition of the costs; the practice condemned in the Franklin case flouted the findings made by a jury of the defendant’s peers. Here the purpose and usual effect of the procedure is limited to the recovery of expenses for which the defendant’s conduct was at least partially responsible; the practice in the Franklin case and its practical effect was to commit acquitted defendants to jail for long periods of time. Here the appellate courts of this Commonwealth considered and approved the practice in numerous cases; the Franklin case was the first, at least since the 14th Amendment to the Federal Constitution, to examine the constitutionality of a practice which had never been specifically sanctioned by our legislature.
Counsel for the appellee with light regard for the legislature and the courts suggests that the words “or the defendant” were inserted in the Act of 1804 “either by mistake or without clear recognition of their ramifications”;[5] that in 1860 the legislature inserted the provision “without consideration of its merits”;[6] that *304 Mr. Justice Gibson was not familiar with the common law of Pennsylvania on imposition of costs when he ivrote about it in 1818, that he misled subsequent' judges and textbook writers, and that the imposition of costs upon acquitted defendants was unknown ex-, cept in Pennsylvania.[7] As we view this case, the common law relating to costs prior to 1804 is no longer important. If other states have different ideas on the disposition of costs in misdemeanor cases, that is an argument to be addressed to the legislature and not the courts. The argument that the legislatures of 1804, 1809 and 1860 did not know what they were doing de^ serves no reply.
We cannot follow the defendant’s argument that the questioned statutory provision constitutes an unlawful delegation of legislative power. It is obvious that in authorizing the disposition of costs, the legislature has not delegated the power to the jury to make a law, but only the power to determine some fact or state of things upon which the law makes its action depend. This it may do. Locke’s Appeal, 72 Pa. 491, 498 (1873); Nester Appeal, supra, 187 Pa. Superior Ct. 313, 316, 144 A. 2d 623 (1958). It is not an exercise of a legislative power by the judiciary for it, *305 through a jury, to dispose of the costs in accordance with a statutory provision, but it would be an unconstitutional assumption of a legislative power by the judiciary were the courts to ignore the statute and dispose of costs contrary to its provisions.
The defendant contends that it is an unconstitutional classification to separate the crimes into summary convictions, misdemeanors and felonies for the purpose of determining in which cases the costs may be placed upon defendants and in which cases they may not be placed upon them. The separation of crimes into these classes and the application of different rules to the different classes has been so uniformly recognized and so firmly established in our law that the validity of legislation dealing with these classes separately need no longer be examined. Although the classification of particular crimes by the legislature may not always appear consistent, the separation of crimes into these classes and the application of different rules to each class is a matter for the legislature and its exercise of that power in separating crimes for the payment of costs is not a violation of the constitution. A classification may be discriminatory and not unconstitutional if any state of facts can be conceived that would sustain it. Jones & Laughlin Tax Assessment Case, 405 Pa. 421, 436, 175 A. 2d 856 (1961).
Contrary to the defendant’s contention, the statutory provision here questioned meets the requirements of the due process clause of Art. 1, §9 of the Constitution of this Commonwealth and the 14th Amendment to the Constitution of the United States. The defendant in a criminal case is presumed, as all of us are, to know the law. Thus, when brought to trial on an indictment charging a misdemeanor, the defendant has notice that the jury may impose the costs of prosecution upon him even if he is acquitted. He has an opportunity to be heard on the question of costs. The *306 decision of the jury is based upon evidence heard by it. The defendant has a right to question the charge of the court on the question of costs. He has the right to subsequently challenge the amount of the costs taxed, and to challenge any arbitrary verdict by the jury in imposing the costs upon him.
The defendant assumes that the imposition of costs under the Act of 1860, supra, is the infliction of punishment upon a person for undefined conduct. The imposition of costs on either the prosecutor or defendant is not punishment for the commission of a crime. Imposition of costs does not form a part of the penalty of even guilty defendants. Commonwealth v. Soudani, 193 Pa. Superior Ct. 353, 356, 165 A. 2d 709 (1960); Commonwealth v. Cauffiel, 97 Pa. Superior Ct. 202, 205 (1929); Commonwealth v. Moore, 172 Pa. Superior Ct. 27, 29, 92 A. 2d 238 (1952). It is true that á'person sentenced to pay the costs in a criminal case may be committed to prison for refusing to pay them. But if he is unable to pay the costs, he may be exonerated from paying them by proceeding under the insolvency act. This procedure is available to him not only after he has been committed to prison for failure to pay the costs, but also before he is committed. Thus, an acquitted defendant upon whom costs have been imposed may be discharged from paying them without having to undergo any actual imprisonment. Kishbaugh’s Petition, 135 Pa. 468, 19 A. 1063 (1890); In re: Collection of Fines, Costs, etc., 76 Pa. D. & C. 456, 469, 471 (1950).
The costs of a case do not always fall upon the unsuccessful party. There are situations in divorce cases, support cases, equity cases and orphans’ court cases where costs, in whole or in part, may be imposed upon the party successful in the action.
There are many crimes made punishable by the legislature which have never been defined by it. The *307 legislature looks to the common law, i.e., court decisions, to define many serious offenses for which it provides punishment. The Act of 1860, supra, is as- specific as any statute can be concerning the right of the jury to dispose of costs in a misdemeanor case, the manner in which the jury may divide the costs and the parties upon whom it may impose the costs. Of course, costs of a trial cannot be imposed upon a defendant for conduct not related to the prosecution, nor for conduct concerning which there is no relevant evidence before the jury. The imposition of costs other than upon the county must be based upon conduct by either the prosecutor or the defendant or both which is related to the case. It is not necessary, indeed it would be impossible, for the legislature to detail all the cir-. cumstances and conditions under which the jury should or should not impose the costs upon the parties. The legislature need not set forth with the same particularity the circumstances under which- a jury, under the control of the court, may exercise the power given to it, as it must set forth the area within which a govern: mental board or commission must act. Nester Appeal, supra, 187 Pa. Superior Ct. 313, 320, 144 A. 2d 623 (1958).
The statute itself does not produce unconstitutional unfairness. Should the verdict in a particular case be arbitrary or should there be a gross abuse of discretion in the imposition of the costs upon either the prosecutor or the defendant, the court has the power to relieve the party from such arbitrary or unjust verdict. Commonwealth v. Cohen, supra, 102 Pa. Superior Ct.. 397, 401, 157 A. 32 (1931); Dunn Appeal, 191 Pa. Superior Ct. 346, 349, 156 A. 2d 349 (1959). The public is frequently put to the cost of trying a defendant'because of reprehensible conduct by him. When the jury is warranted by the evidence and authorized by the legislature to collect these costs from .such defendants *308 there is no reason why the will of the legislature and the jury should be set aside when it is not arbitrary or unwarranted under the evidence.
Those who think it is inconsistent and basically unfair to place the costs upon acquitted defendants insist upon cataloguing all conduct as either wholly right or wholly wrong. But most human conduct does not fit into these absolutes. Any effort to show life in black and white, without gray, fails to accurately portray the truth. Judges, jurors, and legislators for over a century and a half have recognized the “substantial justice” of this provision for the simple reason that in practice it produces results that are fair and just.
There are endless situations in which the jury might find that the defendant’s improper conduct was responsible for the prosecution even though he was not guilty of the crime charged. It is not unjust for a jury to impose costs upon a defendant where the defendant may have clearly committed the offense charged but was able to raise a reasonable doubt that the offense was brought within the statute of limitations; or where the prosecutor and the defendant involved in a fist fight were guilty of conduct not reprehensible enough for a criminal conviction but sufficiently reprehensible to deserve an equal distribution of costs; or where the defendant in a “drunken driving” case drank and then drove while in that twilight zone that exists at some stage of the drinking; or where defendants charged with adultery registered at a hotel as husband and wife but convinced the jury that they had not actually committed adultery. As stated in Commonwealth v. Franklin, supra, 172 Pa. Superior Ct. 152, 193, 92 A. 2d 272 (1952) : “A most important portion of the administration of our system of criminal justice is the fact that the jury in subtle ways may temper the rigidity of our criminal code in the application of the letter of the law to particular cases and may perhaps thereby mitigate the rigors of the law.”
*309 If the test of constitutionality is to be based solely upon a concern for the accused, that concern may not be well placed, for there are undoubtedly many cases where a verdict of “not guilty but pay the costs,” would have been a verdict of guilty had there been no compromise position for the jury to take. See discussion by Judge Burton R. Laub of Erie County in his Pennsylvania Trial Guide, §171.
The defendant in this case was charged with violation of The Penal Code of June 24, 1939, P. L. 872, §716, 18 P.S. §4716, supra, which provides that “Whoever playfully or wantonly points or discharges a gun, pistol or other firearm at any other person, is guilty of a misdemeanor . . .” Prom the part of the record before us, it appears that a woman, her child and her dog were visiting next door to the defendant. The dog started toward the defendant’s property, the child followed it, and the mother pursued both of them to keep them from the defendant’s property. The defendant presumably seeing the child coming toward his property rushed from his home with a pistol and fired it in the direction of the people, all of whom remained on the neighbor’s property. Whether or not this conduct constitutes a violation of §716 is not before us. The jury acquitted the defendant apparently believing that the defendant had fired a blank from a starting revolver which was not aimed directly at the people in the neighbor’s yard. The people in whose direction the defendant fired had no way of telling whether he was shooting- blanks or just failing in an attempt- to hit them. The conduct of the defendant was improper and such as to warrant bringing the prosecution. He was fortunate to have been acquitted, but substantial justice was done to all concerned by the imposition of the-costs upon him.
The statutory provision here attacked has thrice been enacted by the legislature; it has twice been held *310 constitutional by tbe Supreme Court; it has been examined, tested, construed and applied for a century and a half; it is believed by many able trial and appellate court judges to do substantial justice; it constitutes a practical and realistic answer to the problem of costs. We can find no reason that would justify our holding it unconstitutional.
Order reversed, sentence reinstated.

 Few students of Pennsylvania courts would fail to include Chief Justice Gibson and President Judge Keller among the greatest half dozen appellate court judges of this Commonwealth.

 The opinion in this ease was written by President Judge J. Prank Graff, one of the most revered trial judges of this Commonwealth with over 39 years judicial experience, specially presiding in Allegheny County and sitting with two other able and experienced trial judges, Judges Samuel Weiss and Lloyd Weaver. The defendant’s brief on the question of costs filed in that case appears to be identical with the defendant’s brief filed with us.

 No reference to this case is made in the opinion of the court below or in the briefs of the parties.

 The appellee argues that we should declare the questioned provision unconstitutional because the constitutions of a few other 'states prohibit the practice. If the statute were unconstitutional in the manner appellee suggests these states would not need a specific constitutional prohibition. The fact that our constitution, twice rewritten and frequently amended, does not prohibit the im■position of costs is a strong argument that the people of this Commonwealth have joined with their legislature and their courts in approving the practice.

 He ignores that the identical provision was examined by the legislature of 1809 which decided that it should be continued and made perpetual.

 In 1949 a legislative Committee on Penal Laws and Criminal Procedure of the Joint State Government Commission, after care-, ful consideration of the then existing laws governing procedures in criminal matters, retained the provision here under review in its *304 proposed reeodification. See Senate Bill 988, 1949 Session, §1601. Serving on that committee as legislators were five present members of tbe judiciary: Judges Lord, Brown, Rahatjser, Readinger, and Woodring.

 On tbe early law of this Commonwealth on this point see Commonwealth v. Tilghman, supra, 4 S. & R. 127 (1818) ; Berks County v. Pile, supra, 18 Pa. 493, 496 (1852); Long v. Lancaster County, 16 Pa. Superior Ct. 413, 417 (1901); Commonwealth v. Kocher, supra, 23 Pa. Superior Ct. 65, 67, 68 (1903); Kessler on Criminal Procedure in Pennsylvania, Vol. 1, page 235, and cases there cited. On whether this provision has been unique to Pennsylvania see: State v. Butcher, 1 Del. Cases 334 (1793); State v. Miller, 1 Del. Cases 512 (1814); Delaware Constitution of 1792, Art. VIII, §8; Keith v. State, 27 Ga. 483 (1859); State v. Hargate, 1 N.C. 284 (1800).