Commonwealth *v.* Giaccio, Appellant.

140

Argued April 22, 1964. Before BELL, C. J., COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Peter Hearn,* with him *James C. N. Paul,* for appellant.

*John S. Halsted,* Assistant District Attorney, with him *Samuel J. Halpren,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, July 6, 1964:

In the context of current interpretations of the Constitutions of the United States and of this Commonwealth, we are asked to declare invalid the Act of

March 31, 1860, P. L. 427, §62, 19 P.S. §1222,[1] which permits the imposition by a jury of costs on defendants acquitted of misdemeanors.[2] The Act specifically provides: "In all prosecutions, cases of felony excepted, if the bill of indictment shall be returned ignoramus, the grand jury returning the same shall decide and certify on such bill whether the county or the prosecutor shall pay the costs of prosecution; and in all cases of acquittals by the petit jury on indictments for the offenses aforesaid, the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant shall pay the costs, or whether the same shall be apportioned between the prosecutor and the defendant, and in what proportions; and the jury, grand or petit, so determining, in

---

[1] This Act was taken from the Act of December 8, 1804, 4 Sm. L. 204, §§1, 2 and the Act of April 12, 1859, P.L. 528.

[2] The Superior Court, in this case, observed that the validity of the Act has been sustained by it and by this Court on numerous occasions. Judge WOODSIDE, for the majority, noted:

"The validity of a statute imposing costs upon an acquitted defendant was before the Supreme Court in Commonwealth v. Tilghman, 4 S. & R. 127 (1818), where Mr. Justice GIBSON prophesied that the provision in the Act of 1804 would 'prove highly beneficial' even though it, 'at first view, may appear unjust.' One hundred thirteen years later Judge KELLER, speaking for this Court, said of the provision imposing costs upon acquitted defendants, 'However anomalous the course may appear to jurisdictions unfamiliar with our procedure, it is the law of this Commonwealth and it works substantial justice.' Commonwealth v. Cohen, 102 Pa. Superior Ct. 397, 401, 157 A. 32 (1931). Between these two decisions the statutory provision here questioned was examined by the appellate courts, and its use approved many times: Harger v. Commissioners of Washington Co., 12 Pa. 251 (1849); Baldwin v. Commonwealth, 26 Pa. 171 (1856); Commonwealth v. Keenan, 67 Pa. 203, 207, 208 (1871); Linn v. Commonwealth, 96 Pa. 285 (1881). In Commonwealth v. Tremeloni, 93 Pa. Superior Ct. 432 (1927) this Court reversed the court below which had set aside the costs imposed upon a defendant by a jury." (Footnote omitted.)

Also see *Wright v. Commonwealth*, 77 Pa. 470 (1875).

case they direct the prosecutor to pay the costs or any portion thereof, shall name him in their return or verdict; and whenever the jury shall determine as aforesaid, that the prosecutor or defendant shall pay the costs, the court in which the said determination shall be made shall forthwith pass sentence to that effect, and order him to be committed to the jail of the county until the costs are paid, unless he give security to pay the same within ten days."

Appellant was charged with pointing a deadly weapon at another person in violation of §716 of The Penal Code, June 24, 1939, P. L. 872, 18 P.S. §4716. The evidence was that, apparently under the apprehension that persons on a neighbor's land were about to trespass upon his own property, he fired a starting pistol in their direction. The would-be trespassers, at that time, had no way of knowing that appellant was firing blanks or that the weapon was other than a live pistol. The jury acquitted appellant of the substantive offense[3] but imposed the costs of prosecution upon him.

Appellant moved to be relieved of payment of the costs, which motion was granted by the trial judge. In doing so, the court declared the Act of 1860 unconstitutional and set aside the verdict insofar as it imposed upon appellant the "penalty" of the payment of costs.

The Commonwealth appealed to the Superior Court, which reversed and reinstated the "sentence." This Court granted allocatur.

Appellant makes the general constitutional challenge that the Act violates basic principles of fairness, both procedurally and substantively. The statute is attacked as vague and lacking in sufficient standards. It is urged further that the Act is an improper delega-

---

[3] However, appellant's conduct apparently did constitute an assault.

tion of legislative power in contravention of Article II, §1, of the Constitution of Pennsylvania. It is also contended that the Act violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States because it does not treat those acquitted of felonies or of summary offenses in like manner.

At the outset, it is important to note, as did the Superior Court, that the Act of 1860 is not a penal statute, some language in the very early cases notwithstanding. Imposition of costs is not part of any penalty imposed even in those cases where there is a conviction. ". . . [A] direction to pay costs in a criminal proceeding is not part of the sentence, but is an incident of the judgment: Commonwealth v. Dunleavy, 16 Pa. Superior Ct. 380. And see Commonwealth v. Moore, 172 Pa. Superior Ct. 27, 92 A. 2d 238. Costs do not form a part of the penalty imposed by statutes providing for the punishment of criminal offenses, Commonwealth v. Cauffiel, 97 Pa. Superior Ct. 202, and liability for the costs remains even after a pardon by the executive: Cope v. The Commonwealth, 28 Pa. 297; County of Schuylkill v. Reifsnyder, 46 Pa. 446." *Commonwealth v. Soudani,* 193 Pa. Superior Ct. 353, 355-56, 165 A. 2d 709, 711 (1960).

While it is true that the statute empowers the court to "pass sentence to that effect," this authority must be read with the language which immediately precedes it. So considered, it is clear that the term "sentence" is not used in its strictly technical sense as the formal pronouncement to the accused of the legal consequences of his guilt.[4] It merely means an adjudica-

---

[4] "Sentence" may be defined: "The judgment formally pronounced by the court or judge upon the defendant after his conviction in a criminal prosecution, awarding the punishment to be inflicted. Judgment formally declaring to accused legal consequences of guilt which he has confessed or of which he has been

tion by the court in compliance with the statute after the jury's finding that the prosecutor or the defendant shall pay costs. That this is the legislative meaning of the phrase "pass sentence" is made unmistakably evident by the discretion granted to the jury to impose costs not only upon the acquitted defendant but also upon the prosecutor who is not even charged with a criminal offense. Moreover, should the grand jury return a bill "ignoramus," it shall also determine whether the county or prosecutor shall pay the costs.

We conclude, therefore, that the phrase "pass sentence," as used in the statute, is synonymous with the authority of the court to asess a judgment for costs in civil cases.[5]

Just as costs in civil cases may be imposed whenever permitted by statute, not as a penalty but rather as compensation to a litigant for expenses,[6] so, too, the costs under this statute represent compensation or partial reimbursement to the county for expenses incurred in a prosecution.

---

convicted. The word is properly confined to this meaning." Black's Law Dictionary, 1528 (4th ed. 1951).

[5] We do not have before us the question of the validity of that portion of the Act which calls for enforcement of the collection of the costs by imprisonment. It is sufficient to note that where a defendant *refuses* to pay the costs or to provide security therefor, his confinement is the result of the court's exercise of its power to punish contempt. As the Superior Court observed: "But if he is unable to pay the costs, he may be exonerated from paying them by proceeding under the insolvency act. This procedure is available to him not only after he has been committed to prison for failure to pay the costs, but also before he is committed. Thus, an acquitted defendant upon whom costs have been imposed may be discharged from paying them without having to undergo any actual imprisonment. Kishbaugh's Petition, 135 Pa. 468, 19 A. 1063 (1890) ; In re: Collection of Fines, Costs, etc., 76 Pa. D. & C. 456, 469, 471 (1950)."

[6] See *Steele v. Lineberger*, 72 Pa. 239 (1872) ; 1 Laub, Pennsylvania Keystone, Costs §1 (1964).

The civil character of costs is further supported by the authority given the jury to fasten costs upon a prosecutor whose unjustified conduct brings about a prosecution. In this event, the jury may assess all, part or none of the costs against him. If, however, the jury determines that neither the prosecutor nor the defendant were at fault, the jury may place all of the costs upon the county. If the jury determines that both were at fault, it may divide the costs between the prosecutor and the defendant equally or in any other proportion.

Nothing more is here involved than utilization of the machinery of the courts of quarter sessions for the disposition of costs.

"The imposition of costs upon a successful litigant is not unknown to the courts of Pennsylvania. In equity, the orphans' court, and upon appeal to the appellate courts, costs may be placed where justice requires them to be, even though they be placed upon the successful party. The practice and procedure of placing costs upon an acquitted defendant who is not completely innocent or without fault has been a salutary and effective way of administering the criminal law." *Commonwealth v. King,* 33 Pa. D. & C. 2d 235, 244 (1963).

Turning then, directly to the first issue presented, appellant asserts that the Act is vague and lacking in appropriate standards. For support, appellant relies on decisions wherein penal statutes have been declared invalid. We do not here have such a statute. As already noted, the imposition of costs is, in reality, civil in nature. Nor do we have a statute which attempts to create an offense without properly defining the prohibited (or required) conduct. Neither is the statute otherwise vague and uncertain or defective in failing to apprise an accused of the acts the results of which may justify imposition of costs. See *Chester v. Elam,* 408 Pa. 350, 184 A. 2d 257 (1962).

The provisions of the statute constitute clear notice and inform both prosecutor and defendant that the matter of costs may be determined incidentally to the basic issue of guilt or innocence. The Superior Court quite properly observed: "Of course, costs of a trial cannot be imposed upon a defendant for conduct not related to the prosecution, nor for conduct concerning which there is no relevant evidence before the jury."

Assuming that there must exist a standard by which a defendant will know that he may incur costs, we are satisfied that the Act of 1860 fulfills this requirement. It is clear that the Act cannot be read by itself, but must be considered together with the particular statute creating the substantive offense and all the circumstances presented to the jury. A defendant on trial for a misdemeanor knows the charge he must meet and knows that, in the event of a conviction, he may have to pay costs as well. By the Act of 1860, a defendant is also placed on notice that if acquitted, he may have to pay all or part of the costs of the prosecution.

By judicial interpretation, the courts of this Commonwealth for over a century and a half have applied a standard of reasonableness on the issue of costs. The standard is essentially no different from that applied by a court of equity and adequately meets the objections raised by appellant. If a defendant is charged with a misdemeanor and is brought to trial, and a prima facie case is made out, but the jury finds only reprehensible acts or misconduct which fall short of the offense charged, he may be held responsible for the costs of prosecution if his misconduct gave rise to it.[7]

A defendant charged with a misdemeanor also knows that even if the Commonwealth proves its case

---

[7] As a practical matter, if the Commonwealth fails to establish a prima facie case, the defendant may be discharged on demurrer and no costs may be imposed upon him.

against him, a jury may still act in his favor by returning a verdict of "not guilty and pay the costs" plus the silent admonition "but don't do it again." Indeed, it is often his fervent hope that the jury will so find.

President Judge J. FRANK GRAFF, a highly experienced and very able trial judge, in passing upon this issue in *Commonwealth v. King,* supra, 33 Pa. D. & C. 2d at 244 (1963), appropriately held: "The standard by which costs may be placed upon the defendant must arise out of the particular case upon trial. As a factual matter, from vast experience in the trial of cases, juries are reluctant upon occasions to adjudge a defendant guilty, and seek the alternative of not making a record against him, but requiring him to pay the costs, because of his reprehensible conduct. The Constitution does not require impossible standards; all that it requires is that the language conveys sufficiently definite warning as to the prescribed conduct, when measured by common understanding and practice: Roth v. United States, supra [354 U. S. 476, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)] . . . ."

We are satisfied, therefore, that the Act of 1860, as construed and applied, comports with due process of law and is constitutionally acceptable and fundamentally fair.

Appellant contends that the statute denies procedural due process because the only *hearing* contemplated is the trial of the substantive offense and there is not opportunity to "defend" on the issue of costs. By this argument, appellant concedes that there is a hearing afforded, but apparently believes that the Act should provide for a separate hearing on the matter of costs. The trial on the substantive offense offers ample opportunity to defend on the basis that defendant's conduct warrants neither a verdict of guilty nor imposition of costs. In the language of the Superior Court: "He has an opportunity to be heard on the

question of costs. The decision of the jury is based upon evidence heard by it. The defendant has a right to question the charge of the court on the question of costs. He has the right to subsequently challenge the amount of the costs taxed, and to challenge any arbitrary verdict by the jury in imposing the costs upon him."

We also find no merit in appellant's argument that the Act of 1860 is an unconstitutional delegation of legislative power to the judiciary. We are in full accord with the Superior Court's treatment of that issue: "It is obvious that in authorizing the disposition of costs, the legislature has not delegated the power to the jury to make a law, but only the power to determine some fact or state of things upon which the law makes its action depend. This it may do. Locke's Appeal, 72 Pa. 491, 498 (1873); Nester Appeal, supra, 187 Pa. Superior Ct. 313, 316, 144 A. 2d 623 (1958). It is not an exercise of a legislative power by the judiciary for it, through a jury, to dispose of the costs in accordance with a statutory provision, but it would be an unconstitutional assumption of a legislative power by the judiciary were the courts to ignore the statute and dispose of costs contrary to its provisions."

Finally, appellant urges that there is no rational basis for the imposition of costs on a defendant acquitted of a misdemeanor when one acquitted of an unfounded summary offense [8] or a felony [9] is immune from this burden. Consequently, appellant contends the Act of 1860 denies him equal protection of the law.

The Superior Court appropriately answered: "The separation of crimes into these classes and the application of different rules to the different classes has been so uniformly recognized and so firmly established in

---

[8] Act of Sept. 23, 1791, 3 Sm. L. 37, §13, 19 P.S. §1221.

[9] Act of March 31, 1860, P. L. 427, §64, 19 P.S. §1223.

our law that the validity of legislation dealing with these classes separately need no longer be examined. Although the classification of particular crimes by the legislature may not always appear consistent, the separation of crimes into these classes and the application of different rules to each class is a matter for the legislature and its exercise of that power in separating crimes for the payment of costs is not a violation of the constitution. A classification may be discriminatory and not unconstitutional if any state of facts can [reasonably] be conceived that would sustain it. Jones & Laughlin Tax Assessment Case, 405 Pa. 421, 436, 175 A. 2d 856 (1961)."

In the instant situation, it appears that felony prosecutions are of such public importance that the Commonwealth is willing to bear the costs thereof. As to summary offenses, there is no jury which may impose costs.

Classification is a task exclusively for the Legislature. Our only inquiry is to determine whether a classification is patently arbitrary and utterly lacking in rational justification. *Milk Control Commission v. Battista,* 413 Pa. 652, 198 A. 2d 840 (1964). The classification created by the Act of 1860 does not violate this standard, and it must be permitted to stand.

Appellant has failed to meet his heavy burden of proving that the Act of 1860 clearly, palpably and plainly violates the Constitution. *Milk Control Commission v. Battista,* supra.

We share the Superior Court's concluding comment: "The statutory provision here attacked has thrice been enacted by the legislature; it has twice been held constitutional by the Supreme Court; it has been examined, tested, construed and applied for a century and a half; it is believed by many able trial and appellate court judges to do substantial justice; it constitutes a practical and realistic answer to the prob-

lem of costs. We can find no reason that would justify our holding it unconstitutional."

The order of the Superior Court is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

I would adopt the dissenting opinion of Judge FLOOD, 202 Pa. Superior Ct. 310, 196 A. 2d 189 (1963), and reverse the judgment of the Superior Court.