## Sexton v. County of York

*Alan N. Linder*, for plaintiffs.

*Edward H. H. Garber*, Solicitor, for Clerk of Courts.

*Gordon A. Roe,* Assistant Solicitor, for York County.

BLAKEY, J., February 7, 1973.—

### ADJUDICATION ISSUES

Plaintiffs attack the constitutionality of the Act of March 31, 1860, P. L. 427, sec. 62, 19 PS §1222, which empowers a grand jury, upon dismissing bills of indictment, to place court costs upon the prosecutor. Plaintiffs, who have initiated a class action, contend that the statute violates their constitutional rights to petition their government for redress of grievances, denies them access to the courts, denies them equal protection of the laws as a circumstance of their inability to pay such costs, and is void for vagueness.

## FINDINGS OF FACT

Preliminarily, plaintiffs alleged that they were indigent and sought leave of court to proceed in forma pauperis. The County of York admitted the indigency of Willie Mae Mosely. Testimony was taken as to the ability of Rita Sexton to pay costs. The court determined that she was financially able to pay the costs of litigation at the York County stage.

The essential facts are not in dispute. The following have been admitted by the pleadings: Both plaintiffs are adult individuals residing in York County. In June 1972, plaintiff, Rita Sexton, filed criminal charges against one James Williams, alleging assault and battery. During the same month, a member of the York City Police Force, upon information supplied by plaintiff, Willie Mae Mosely, filed criminal charges against one Sylvester Pool for assault and battery, aggravated assault and battery and assault with intent to kill. After preliminary hearing, each case was held for action by the grand jury. The grand jury, duly constituted July 24, 1972, considered both cases, dismissed the same, and in each case placed the applicable costs of prosecution upon plaintiffs under authority of the statute here under attack.

The parties have further stipulated that the procedures followed by the Clerk of Courts of York County in the collection of costs imposed by the grand jury on prosecutors is as follows:

1. In the event that the Grand Jury of York County, Pennsylvania, orders costs of prosecution to be placed on the prosecutor or prosecutrix (hereinafter "person"), the Clerk of Courts of York County, Pennsylvania (hereinafter "clerk") notifies the person of same by form letter to appear before him within a specified time, and makes arrangements with him to pay such costs. The letter fur-

ther threatens attachment, arrest and imposition of additional costs for failure to so appear.

2. If the person fails to appear before the clerk, the clerk requests that the court issue an attachment.

3. If the person appears before the clerk and refuses to pay said costs, the clerk either arranges a court hearing and so notifies the person, or requests that the court issue an attachment for said person.

4. If the person appears before the court and alleges that he is unable to pay said costs, the clerk may (a) arrange a payment schedule without necessity of a court hearing; (b) request the court to issue an attachment; or (c) set up a court hearing and so notify the person of said hearing.

5. If a hearing is held, the court may dispose of the matter by ordering: (a) immediate payment of costs; (b) periodic payments to the clerk; (c) remission of the costs; or (d) commitment to jail.

6. If the person fails to pay said costs following an order of court, the clerk requests that the court order an attachment issued.

The Attorney General of the Commonwealth of Pennsylvania has been advised of this attack upon the constitutionality of a State statute in accordance with Pennsylvania Rule of Civil Procedure 235.

The parties have agreed that the court may rule on basis of present record on the issue of the permanent injunction sought by plaintiffs.

## DISCUSSION

### I.

The major challenge to the constitutionality of this statute is that it violates the due process requirements of the Federal Constitution because it is too vague.

The statute provides:

"In all prosecutions, cases of felony excepted, if the bill of indictment shall be returned ignoramus, the grand jury returning the same shall decide and certify on such bill whether the county or the prosecutor shall pay the costs of prosecution, and in all cases of acquittals by the petit jury on indictments for the offenses aforesaid, the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant shall pay the costs, or whether the same shall be apportioned between the prosecutor and the defendant, and in what proportions; and the jury, grand or petit, so determining, in case they direct the prosecutor to pay the costs or any portion thereof, shall name him in their return or verdict; and whenever the jury shall determine as aforesaid, that the prosecutor or defendant shall pay the costs, the court in which the said determination shall be made shall forthwith pass sentence to that effect, and order him to be committed to the jail of the county until the costs are paid, unless he give security to pay the same within ten days."

In Giaccio v. State of Pennsylvania, 382 U.S. 399, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966), 415 Pa. 139, 202 A. 2d 55 reversed and remanded, the United States Supreme Court held that the same statute was unconstitutionally vague as authority for placing costs upon a defendant, as it leaves the public uncertain as to the conduct it prohibits and leaves judges and jurors without standards to define when costs should be so imposed. The court held that the act was defective as originally written and that such defect had not been cured by subsequent State court decisions which were summarized as providing that:

"Juries having found a defendant not guilty may impose costs upon him if they find that his conduct, though not unlawful, is 'reprehensible in some respect,' 'im-

proper,' outrageous to 'morality and justice,' or that his conduct was 'not reprehensible enough for a criminal conviction but sufficiently reprehensible to deserve an equal distribution of costs' or that though acquitted 'his innocence may have been doubtful.' "

Since we are here dealing with the same statute, which is as silent with respect to standards for the action of the grand jury in imposing costs upon a prosecutor as it is for the imposition of costs upon a defendant, there can be no doubt that the act itself is constitutionally infirm. However, we believe that the situation is significantly different when the court decisions which have interpreted these different sections of the statute have been considered. As noted in both the United States Supreme Court, in Giaccio, cited above, and in the decision of the Pennsylvania Supreme Court, reported in 415 Pa. 139, at page 146, the necessary guidelines may be provided by such decisions, in which event the same would cure the defect in the statute itself.

There have been a long line of Pennsylvania appellate decisions which have declared that the action of a grand or petit jury in imposing costs upon a prosecutor is subject to the supervisory powers of the court. These cases have defined the standards governing the proper exercise of such power. The leading case is Guffy v. Commonwealth, 2 Grant 65 (1853), which dealt with the Act of December 8, 1804, P. L. 3, 4 Sm. L. 204, substantially similar to the present statute, wherein the court declared, page 68:

"It was not intended to authorize the jury to punish innocent prosecutors, acting upon well founded grounds of belief, in preferring charges of a character which ought to be investigated. It was enacted expressly to prevent 'restless and turbulent people' from 'harassing the peaceable part of the community with *trifling*,

*unfounded* or *malicious prosecutions.'* Where the prosecution is not 'trifling,' but one of a grave character; where it is not 'unfounded,' but founded upon probable cause existing at the time it was commenced, but afterwards fails by the death of material witnesses, and where there is no evidence of malice in the prosecution, it is the duty of the court to set aside the verdict against the prosecutor for the costs. In short, this is the duty of the court in all cases where 'there is nothing in the testimony to show that the prosecutor behaved improperly.' "

Similar standards were reiterated in Commonwealth v. Boyle, 16 Pa. Superior Ct. 171 (1901), where the court set aside the costs and in Commonwealth v. Shaffer, 52 Pa. Superior Ct. 230 (1913), where the prosecutor was discharged after the court concluded that he had acted in good faith, on reasonable cause, and without malice. Compare Commonwealth v. Kocher, 23 Pa. Superior Ct. 65 (1903), where the prosecutor was obligated to pay costs, as he had proceeded with the case and increased such costs knowing that much of the evidence was not admissible.

These principles have been repeatedly followed in York County. In Petition of Houch, 1 York 20 (1880), the court declared that a prosecutor ought not be made to pay the costs where he gives information honestly, but that he should be obligated to pay costs whereas the information is falsely and maliciously brought to the jury. In Commonwealth v. Birch, 30 York 113 (1916), where the grand jury placed costs upon the prosecutor, the court refused to remove the same, stating that the grand jury had determined that there was no probable cause for commencing the prosecution, and that the prosecutor had acted from personal motives. Costs were set aside in Commonwealth v.

Rodgers, 31 York 28 (1917), when the court concluded that the prosecutor had good grounds for instituting the criminal action. And in Commonwealth v. Harris, 64 York 15 (1949), the court refused to set aside cost under facts which strongly suggested personal malice.

Other counties in the Commonwealth have followed the same guidelines. See for example, Commonwealth v. Cliver, 62 Montg. 134 (1946), where the costs were remitted after the court concluded that the charge was not unfounded, was based upon probable cause, was brought in good faith, and that there was nothing in the testimony to show that the prosecutrix was actuated by malice or ill will.

We take judicial notice of the fact that the York County grand jury which imposed the costs at issue upon these plaintiffs was instructed in line with the above authority before it began its work, pursuant to our standard local practice as follows:

"If you place the costs upon the prosecutor, you should identify him by name. I may say that if you find a charge to be frivolous, trivial or without foundation, or to have been brought maliciously and without probable cause or that the criminal law has been used to attempt to enforce a civil obligation, you should have no hesitation in dismissing the bill and placing the costs on the prosecutor. It is fitting and proper that a prosecutor who has acted in such a manner should bear the burden of his action and your disposition may serve as a deterrent to discourage similar proceedings. On the other hand, you should not ordinarily place the costs on a prosecutor who is a public officer and was acting as such in bringing the prosecution unless you should find that bad faith or malice was present."

We believe that these cases do provide meaningful guidelines which meet the constitutional objection. Standards of truthfulness, probable cause, and action

without malice or personal motives continually arise during the application of the law of this Commonwealth. For example, consider the law of libel, slander and malicious prosecution and the standards which define the lawfulness of an arrest. In our opinion, these standards are far more meaningful than the admittedly fuzzy line drawn with respect to placing costs upon a defendant who has been acquitted but apparently did "something wrong." Consequently, we hold that Giaccio does not control our issue and that statute, as interpreted with respect to the placement of costs upon a prosecutor, is not void for vagueness.

## II.

Access to the courts is guaranteed by the due process clause of the Fourteenth Amendment to the Federal Constitution. As stated in Boddie v. Connecticut, 41 U.S. 371, 91 S. Ct. 780, 13 L. Ed. 2d 113 (1971):

"A state must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the due process clause."

Plaintiffs contend that the threat posed by the statute which authorizes a grand jury to impose costs upon a prosecutor has the practical effect of denying them access to the courts, aside from the issue of their ability to pay such costs. (Their alternative argument in the event of indigency is discussed below.)

Plaintiffs cite no authority to support this position. It is clear that the possibility of being taxed with costs after the party has had his day in court is not equivalent to a prior restraint upon access, such as the restrictions upon prisoners rejected in U.S. ex rel. Mayberry v. Prasse, 225 F. Supp. 752 (1963), or the requirement to pay filing fees, which the litigant cannot afford, before he can institute an action, which was the issue in Boddie, supra.

In our view, the statute, as interpreted, implements a sound policy of discouraging the filing of improper criminal charges and at the same time has no more than a highly incidental effect upon prosecutors proceeding in good faith, upon probable cause without malice or personal motivation. Plaintiffs do not, and could not assert a constitutional right to bring unfounded or malicious charges. Given the supervisory powers of the court, and the guidelines stated above, plaintiffs are then obliged to argue that a prosecutor in a proper case will not file charges because he believes that there is a significant risk that the grand jury may act in an arbitrary and improper manner in imposing costs upon him and that the burden of filing a petition to have such costs set aside is too much for the assumption of such risk. We do not find this contention persuasive. We believe that any deterrent effect at all is incidental and insignificant. As stated in Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), an incidental effect upon a fundamental constitutional right is not a sufficient basis to prohibit the state from enforcing reasonable regulations.

The possibility of being improperly taxed for the costs and the necessity of thereafter filing a petition to have the same set aside, is no more than a reasonable qualification upon plaintiff's right of access to the courts. The very cases cited by plaintiffs are authority for the principle that the rights here involved, as in many areas of constitutional law, are subject to a degree of reasonableness. It is reasonable access to the courts that was guaranteed by Mayberry, supra, and reasonable regulations which restrained such access were approved in Gittlemacker v. Prasse, 428 F. 2d 1 (1970).

If the position of plaintiffs were accepted, it would logically follow that the universal practice of taxing costs in a civil matter to the losing party would likewise

be unconstitutional. The possibility of losing a case, the expense of preparation, the necessity of paying legal fees, and the possibility of being taxed with costs, all operate to discourage to some degree the institution of litigation. It is simplistic to contend that these practical considerations violate a constitutional right.

Finally, on this point, we note the very recent decision of Merrick v. Jennings, 446 Pa. 489 (1972). There, our Supreme Court refused to enjoin the application to alleged indigents of statutes permitting imprisonment for nonpayment of fines. The court held that indigents who are threatened with such imprisonment have an adequate remedy at that time by raising pertinent United States Supreme Court decisions. By analogy, a petition to set aside costs is an equally adequate remedy to meet the constitutional objection here advanced.

III.

Alternatively, plaintiffs contend that they are indigent and that the statute which authorizes the imposition of costs upon them denies their Fourteenth Amendment rights of equal protection of the law by creating a classification based on wealth.

In our view, the statute, as interpreted, does not create a classification based upon wealth but does divide those who properly bring criminal charges from those who file charges that are trifling, unfounded or malicious. Although a person of limited means may consider more seriously the risk of costs being improperly imposed upon him as the adverse effect of such liability is more substantial, the indigent, like the more affluent, is charged with knowledge of the procedures for relief. He also knows, or should know, that counsel is available to him, free of charge to plead his cause, which certainly would include filing a petition to set

such costs aside. Consequently, we conclude that the deterrent effect of the statute, if any, upon the prosecutor of a proper charge is incidental whether he is indigent or not.

In addition, it is clear from the procedure set forth in the stipulations that if the indigent prosecutor responds to the letter from the clerk and asserts his inability to pay, that the clerk can do no more than bring him before the court for consideration. The court is bound by the law of this Commonwealth as set forth in such cases as Commonwealth ex rel. Brown v. Hendrick, 220 Pa. Superior Ct. 225 (1971), to impose no penalty in the absence of a willful failure to pay, which would not be present without the ability to make such payment. In effect, with further reference to Messick, cited above, the indigent prosecutor has a second adequate remedy at law. See also the relief afforded the indigents who have been taxed with costs as set forth in such statutes as the Act of September 23, 1791, 3 Sm. L. 37, sec. 12, 19 PS §1292, the Act of June 4, 1901, P. L. 404, sec. 6, 39 PS §13, and the Act of May 6, 1887, P. L. 86, sec. 1, 39 PS §14.

We conclude that in the context of applicable statutes, practices and procedures, that the special problems of indigents are fully protected, and that their attack upon the statute, along with that of the more affluent, fails to establish a violation of their constitutional rights.

IV.

Plaintiffs further contend that the statute operates to deny their First Amendment rights to petition the government for redress of grievances.

Plaintiffs candidly state that they have been unable to find any case law to support their view that First Amendment rights are here involved. In our opinion,

the right to petition the government in the context of such other First Amendment rights as the freedom of speech and assembly indicate that the amendment is directed to the freedom to persuade officials by procedures other than institution of litigation. In any event, the argument advanced on this ground adds nothing to the acknowledged right of plaintiffs to meaningful access to the courts as a consequence of the due process clause of the Fourteenth Amendment. The argument is rejected upon the same reasoning.

## V.

Since we have not granted plaintiffs the relief which they have requested, the court will not rule upon the propriety of the alleged class action. In our view, the intellectual exercise involved will add nothing to the case.

## CONCLUSIONS OF LAW

1. The statute which authorizes a grand jury to impose costs upon a prosecutor, as interpreted, does not deny due process of law under the Fourteenth Amendment of the United States Constitution as being void for vagueness.

2. The statute does not deny plaintiffs' Fourteenth Amendment due process rights of access to the courts.

3. The statute does not deny plaintiffs' Fourteenth Amendment right of equal protection of the laws on the basis of wealth.

4. The statute does not deny plaintiffs' right to petition the government guaranteed by the First Amendment of the United States Constitution.

5. This action must be dismissed at the cost of plaintiffs.

## DECREE NISI

And now, February 7, 1973, it is ordered, adjudged, and decreed that this action be dismissed at the cost of plaintiffs.

The prothonotary is directed to enter this decree as a decree nisi and to give notice thereof to the parties through their respective counsel.

If no exceptions are filed to this decree nisi within 20 days from the date of such notice, the prothonotary will, upon proper praecipe, enter such dismissal as the final decree of the court.